UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

JOSEPHINE MARAZZO,

               *Plaintiff*,

   -against-                    **MEMORANDUM AND ORDER**
                                           19-CV-0552 (KAM)

COMMISSIONER OF SOCIAL SECURITY,

               *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Josephine Marazzo ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found plaintiff not disabled and thus not entitled to disability insurance benefits ("DIB") under sections 216(i) and 223(d) of the Social Security Act ("the Act"). Before the court are the parties' cross-motions for judgment on the pleadings. For the reasons set forth below, plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion for judgment on the pleadings is respectfully DENIED, and this action is REMANDED for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

        The factual and procedural background leading to this action is set forth in the administrative record.

(Administrative Transcript ("Tr."), ECF No. 21.)  The court has
reviewed the parties' respective motions for judgment on the
pleadings and the administrative record.  The parties entered
into a joint stipulation of facts on January 8, 2020, detailing
Ms. Marazzo's medical history and Ms. Marazzo's testimony at her
administrative hearing, which the court hereby incorporates by
reference.  (*See* Joint Stipulation of Facts ("Stip."), ECF No.
20-1.)

## I. Procedural History

        Plaintiff filed an application for disability
insurance benefits on September 14, 2015, alleging disability
beginning July 25, 2011 due to severe impairments of cervical
and lumbar spine sprain/strain, status post arthroscopic surgery
to the left shoulder, right knee sprain, anxiety disorder, and
depression.  (Tr. 17, 240-41.)  Plaintiff's claim was denied on
March 22, 2016.  (*Id.* 88-99.)  On March 28, 2016, Ms. Marazzo
requested a hearing before an administrative law judge ("ALJ").
(*Id.* 100.)  On November 15, 2017, Marazzo appeared with counsel
and testified via video conference before ALJ Hilton R. Miller
("ALJ Miller").  (*Id.* 39-70.)  At the hearing, ALJ Miller heard
testimony by plaintiff, Sharon Kahn, a medical expert, and
Michael Smith, a vocational expert.  (*Id.*)

        On January 29, 2018, ALJ Miller issued a decision
affirming the SSA's determination that Marazzo did not qualify

as disabled within the meaning of the Act and, as a result, was
not entitled to benefits. (*Id.* 12-38.)  On February 17, 2018,
plaintiff appealed ALJ Miller's decision to the Appeals Council.
(*Id.* 213-36.) On November 27, 2018, the Appeals Council denied
Marazzo's request, making ALJ Miller's decision the final
decision of the Commissioner.  (*Id.* 1-6.)  This action followed.
(*See generally* Complaint ("Compl."), ECF No. 1.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may
bring an action in federal court seeking judicial review of the
Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g),
1383(c)(3). The reviewing court does not have the authority to
conduct a *de novo* review and may not substitute its own judgment
for that of the ALJ, even when it might have justifiably reached
a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir.
2012). Rather, "'[a] district court may set aside the
Commissioner's determination that a claimant is not disabled
only if the factual findings are not supported by 'substantial
evidence' or if the decision is based on legal error.'" *Burgess
v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v.
Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

"Substantial evidence means 'more than a mere
scintilla. It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" *Id.* (quoting

*Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## DISCUSSION

### I. The Commissioner's Five-Step Analysis of Disability Claims

A claimant must be "disabled" within the meaning of the Act to receive disability benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32. The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner prescribe a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled. *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4).

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted). "However, [b]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (internal quotation marks omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform her past relevant work [and considering her residual functional capacity, age, education, and work experience], is able to

engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)). If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

## II. The ALJ's Application of the Five-Step Analysis

Using the five-step sequential process to determine whether a claimant is disabled as mandated by the SSA regulations, the ALJ made the following determinations.

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 25, 2011 to the date she was last insured on December 31, 2017.  (Tr. 17.)

At step two, the ALJ determined that plaintiff had the severe impairments of cervical spine sprain/strain, lumbar spine sprain/strain, left shoulder status post-arthroscopic surgery, right knee sprain, anxiety disorder, and depression.  (*Id.*)  The ALJ noted that plaintiff went to the emergency room in September 2017 for right wrist pain, where an x-ray revealed an acute avulsion fracture and adjacent soft tissue swelling; plaintiff was discharged with a splint, and did not require further treatment for the injury.  (*Id.* 18.)  The ALJ thus concluded that plaintiff's right wrist impairment was not severe since it did not meet the durational requirement of 20 C.F.R. 404.1509. (*Id.*)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1.  (*Id.*)  Specifically, ALJ Miller considered plaintiff's impairments under listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).  (*Id.*)  ALJ Miller determined that Ms. Marazzo did not meet listing 1.02 for major joint dysfunction because there was no medical evidence of gross anatomical deformity and chronic joint pain/stiffness with signs of limited or abnormal joint motion, or imaging that

revealed joint space narrowing, bony destruction, or ankylosis; further, there was no evidence that plaintiff was unable to ambulate or unable to perform fine and gross movements effectively. (*Id.* 20.)  ALJ Miller determined that Ms. Marazzo did not meet listing 1.04 for spinal conditions because the medical evidence did not indicate nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, and because plaintiff could ambulate effectively. (*Id.*)  ALJ Miller determined that Ms. Marazzo did not meet listings 12.04 or 12.06 for mental disorders because Ms. Marazzo had only moderate limitations in understanding, remembering, and applying information, in interacting with others, and in concentrating, persisting, and maintaining pace, and mild limitations in adapting and managing herself—as opposed to marked or extreme limitations in these areas of functioning. (*Id.* 18-19.)  Moreover, ALJ Miller found no evidence that plaintiff received medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that diminished her symptoms, or that plaintiff had only a marginal capacity to adapt to changes in her environment. (*Id.* 19.)

The ALJ next concluded that plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (*Id.* 20.)  To this RFC, the ALJ added several exertional limitations, including: occasionally climbing ramps and stairs; never using

ladders, ropes, or scaffolds; occasionally balancing, kneeling, crouching, and squatting; never crawling; never reaching overhead with the left upper extremity; never manipulating with the lower extremities; never working with hazards such as dangerous machinery, motor vehicles, unprotected heights, vibrations, or temperature extremes, and; switching from sitting to standing every thirty minutes. (*Id.*)  The ALJ also added several non-exertional limitations, including: performing simple, routine, and repetitive tasks and some moderately complex tasks that can be explained (SVPs 1-4); only occasionally changing routine, and; no more than frequent contact with others.  (*Id.*)

In arriving at this RFC, the ALJ accorded varying weight to the medical opinions, specifically: "great weight" to the opinion of Dr. P. Kennedy-Walsh, Ph.D, a non-examining, State agency psychological consultant; "some weight" to the opinion of Dr. Christopher Perez, M.D., one of plaintiff's treating physicians for her physical impairments; "some weight" to the opinion of Dr. Stanley Soran, M.D., a consultative examiner evaluating plaintiff's physical impairments; "some weight" to the opinion of Dr. Steven Zeretsky, M.D., a consultative examiner evaluating plaintiff's physical impairments; "some weight" to the opinion of Dr. Ilana Reich, Ph.D, one of plaintiff's treating physicians for her mental

9

impairments; "some weight" to the opinion of Dr. Anthony
Conciatori, D.O.,[1] one of plaintiff's treating physicians for her
mental impairments; "some weight" to the opinion of Dr. Igor
Rubinshteyn, M.D., a consultative examiner evaluating
plaintiff's physical impairments; "some weight" to the opinion
of Dr. Igor Stiler, M.D., a neurologist, one of plaintiff's
treating physicians for her physical impairments, and;
"significant weight" to the opinion of Dr. Sharon Kahn, Ph.D, a
non-examining medical expert who opined about plaintiff's mental
impairments.  (*Id.* 28-31.)  Further, upon assessing the medical
evidence and opinions, the ALJ found that plaintiff's medically
determinable impairments could reasonably be expected to cause
her alleged symptoms, but that plaintiff's "statements
concerning the intensity, persistence, and limiting effects of
these symptoms [were] not entirely consistent" with the
evidence.  (*Id.* 21.)

        At step four, the ALJ determined that plaintiff was
unable to perform her past relevant work as a bank branch
manager.  (*Id.* 32.)

        At step five, the ALJ concluded that given plaintiff's
age, education, work experience, and RFC, jobs existed in
significant numbers in the national economy that plaintiff could

---

[1]     Dr. Robert J. Conciatori, M.D., provided a psychological consultation
in connection with plaintiff's Workers' Compensation case.  (Tr. 809-11.)

perform.  (*Id.* 33.)   The ALJ supplied the vocational expert with
the above information, who determined that plaintiff could
perform the requirements of representative occupations like data
examination clerk, registration clerk, or tax clerk.  (*Id.* 33-
34.)   The ALJ thus concluded that plaintiff was not disabled
within the meaning of the Act.  (*Id.* 34.)

### III.   The ALJ Erred in Failing to Apply the Treating Physician Rule to the Opinions of Drs. Perez, Stiler, Reich and Conciatori, Plaintiff's Treating Physicians

"[A]n ALJ should defer to 'to the views of the
physician who has engaged in the primary treatment of the
claimant.'" *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir.
2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d
Cir. 2003)).[2] "However, '[a] treating physician's statement that
the claimant is disabled cannot itself be determinative.'" *Id.*
(quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).
"Rather, 'a treating source's opinion on the issue(s) of the
nature and severity of [a claimant's] impairment(s)' will be
given 'controlling weight' if the opinion is 'well-supported by

---

[2]     The Commissioner has revised its rules to eliminate the treating
physician rule, and ALJs are now to weigh all medical evaluations, regardless
of their sources, based on how well supported they are and their consistency
with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c.
Claims filed before March 27, 2017, however, are still subject to the
treating physician rule, *see id.* § 404.1527(c)(2), and the Court accordingly
applies the rule to this case, as plaintiff filed her claim on September 14,
2015. *See, e.g., Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y.
2019).

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

"An 'ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "The ALJ must then 'comprehensively set forth his [or her] reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129).

In this analysis, although an ALJ should generally explain the weight given to each opinion, remand is not required where application of the proper legal standards would lead to the same conclusion previously reached. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Failure to consider the opinion of a treating physician "ordinarily requires remand to

the ALJ for consideration of the improperly excluded evidence,
at least where the unconsidered evidence is significantly more
favorable to the claimant than the evidence considered." *Id.* at
409. "Remand is unnecessary, however, '[w]here application of
the correct legal standard could lead to only one conclusion.'"
*Id.* (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).
For instance, in *Zabala*, the court found it was harmless error
to "exclude[] evidence [that was] essentially duplicative of
evidence considered by the ALJ," as there would be no reasonable
likelihood that consideration of the unconsidered report would
change the outcome. *Id.* at 409-10 (noting that "[t]he
[unconsidered] report [was] largely identical to a [different]
report by the same doctor, which the ALJ did consider," and
which set forth substantially identical findings).

        The Commissioner argues that the ALJ gave proper
weight to the medical sources and that the ALJ's decision is
supported by substantial evidence.  (*See* Def. Mem. in Support of
Def.'s Cross-Mot. for J. on the Pleadings ("Def. Mem.") at 6-
13.)  Plaintiff contends that the ALJ failed to properly apply
the treating physician rule to the opinions of Dr. Perez, Dr.
Stiler, Dr. Reich, and Dr. Conciatori, and failed to adequately
assess plaintiff's credibility.  (Pl. Mem. in Support of Pl.'s
Mot. for J. on the Pleadings ("Pl. Mem.") at 18-22, ECF No. 17.)

"The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008); *Green-Younger v. Barnhart,* 335 F.3d 99, 106–07 (2d Cir. 2003)).  "SSA regulations provide a very specific process for evaluating a treating physician's opinion and instruct ALJs to give such opinions 'controlling weight' in all but a limited range of circumstances." *Greek v. Colvin,* 802 F.3d 370, 376 (2d Cir. 2015) (internal citations omitted).  Each of the *Burgess* factors ALJ Miller was required to consider when determining the amount of weight to afford the treating physicians' opinions weigh in favor of affording Dr. Perez, Dr. Stiler, Dr. Reich, and Dr. Conciatori greater weight than ALJ Miller afforded.  As a group, the doctors are certified specialists who have years-long treatment relationships with plaintiff, and have supplied consistent, well-supported, medical evidence for their opinions.[3]  ALJ Miller only afforded "some

---

[3]     Plaintiff argues that her treating physicians offered substantial medical evidence that plaintiff had an impairment that met or medically equaled the severity of one or more of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526), specifically Listing 1.04, disorders of the spine, and Listing 12.04A1, depression.
        Plaintiff argues that her treating physicians have provided substantial medical evidence in support of a finding of degenerative disc disease as found in Listing 1.04, section A.  Plaintiff argues that her condition has evidence of nerve root compression (radiculopathy) (Tr. 721, 743, 746-47,

weight," rather than "controlling weight," to claimant's

treating physicians because ALJ Miller concluded that: (1) the

opinions of Drs. Perez and Stiler were not well-supported by

medically acceptable diagnostic techniques; and (2) that the

opinions of Drs. Reich and Conciatori were inconsistent with the

substantial objective medical evidence.  (Tr. 28-30.)  The ALJ

procedurally erred when he failed to explicitly consider the

---

760, 764, 793, 905); limited range of motion (*id.* 358, 363-64, 369-70, 377,
383, 389, 395, 401, 407, 413, 419, 425, 433, 443, 454, 464-65, 474, 486, 492-
93, 499, 506, 513, 520, 527, 534, 553, 558-59, 565, 572, 578-79, 585, 591,
597-98, 604, 611, 617, 623, 629, 635, 640, 647, 652, 658-59, 665, 670-71,
676, 683-84, 689-90, 695-96, 702, 707-08, 714, 719, 725, 731, 737-38, 767,
769, 771, 773, 775, 777, 779, 781, 783, 785, 787, 789, 821, 882-83, 888, 907,
913, 920, 928, 936, 944, 952, 960, 968, 976, 984, 992, 1001, 1007, 1013);
motor loss (muscle weakness) and sensory or reflex loss (*id.* 358-60, 365-66,
372, 391, 401, 409, 415, 420-21, 426-27, 434-35, 466, 599, 618, 623, 630,
672, 678, 685, 768, 770, 772, 774-75, 778, 782, 882-83, 978); and positive
straight-leg raising tests (supine and sitting) (*id.* 358, 370, 377, 383, 389,
395, 401, 407, 413, 419, 425, 433, 443, 454, 465, 474, 486, 493, 499, 506,
513, 520, 527, 534, 553, 559, 565, 572, 579, 585, 591, 957, 598, 604, 611,
617, 623, 629, 635, 641, 647, 653, 659, 665, 671, 677, 684, 690, 696, 702,
708, 714, 720, 726, 732, 738, 767, 769, 771, 773, 777, 781, 785, 787, 789,
816, 882-83, 914, 921, 929, 937, 945, 953, 961, 969, 977, 985, 993, 1001,
1008, 1014).  (*See* Pl. Reply Mem. 5-7, ECF No. 20.)

    Plaintiff also argues that her treating physicians have also provided
substantial medical evidence in support of a finding of depression as found
in Listing 12.04A1.  Plaintiff argues that her condition has evidence of:
depressed mood (Tr. 754, 757, 798-800, 809-11, 831, 833-35, 837, 846, 856,
877), diminished interest in almost all activities (*id.* 755, 757, 831, 833,
856, 877), appetite disturbance with change in weight (*id.* 755, 757, 831,
833, 844, 847, 877), sleep disturbance (*id.* 754, 798, 800, 831, 833, 835,
837, 843-45, 847-48, 852, 876-77), decreased energy (*id.* 754, 757, 831, 833,
847, 851-52, 876-77), feelings of guilt or worthlessness (*id.* 755, 876-77),
difficulty concentrating or thinking (*id.* 755, 757-58, 829, 831, 852, 876-
77), and thoughts of suicide (*id.* 755, 831, 877).  Plaintiff argues that she
also may satisfy subsection B of this listing because her treating physicians
have offered substantial medical evidence that she has at least marked
limitations with respect to understanding, remembering, or applying
information (*id.* 828, 872); interacting with others (*id.* 758, 829, 873, 877);
and concentrating, persisting, or maintaining pace (*id.* 829). (*See* Pl. Reply
Mem. 5-7.)

    The court does not offer its opinion on whether plaintiff meets or
medically equals the listed impairments, as such a determination remains in
the province of the ALJ.  However, the court offers these examples to
demonstrate that the treating physicians have provided substantial medical
evidence that the ALJ appears to have overlooked.

*Burgess* factors while determining what weight to afford the opinions and medical evidence from plaintiff's treating physicians.  *See Estrella*, 925 F.3d at 96.  "Because the ALJ procedurally erred, the question becomes whether a searching review of the record ... assures the court ... that the substance of the ... rule was not traversed—i.e., whether the record otherwise provides 'good reasons' for assigning '[some] weight' to [the treating physicians'] opinion[s]." *See id.* (ellipsis in original) (citing *Halloran*, 362 F.3d at 32).

Based on the following review of the record, the court finds that ALJ Miller's conclusions that plaintiff's treating physicians' opinions were either (1) not well-supported by medically acceptable diagnostic techniques or (2) were inconsistent with the substantial objective medical evidence, were based on the ALJ's factually deficient reading of the record.  The court remands and directs ALJ Miller to explicitly consider the *Burgess* factors and explain whether he affords controlling weight to the opinions of plaintiff's treating physicians, Drs. Perez, Stiler, Reich and Conciatori.

### A. Dr. Perez's Opinion

ALJ Miller erred in according only "some weight," rather than "controlling weight," to claimant's treating physician, Dr. Perez, when ALJ Miller erroneously concluded that: (1) Dr. Perez's opinion was not well-supported by

16

medically acceptable diagnostic techniques; and (2) that Dr. Perez's opinion was inconsistent with substantial evidence in the record.

First, the court reviews Dr. Perez's findings and treatment plan to determine whether they are well-supported by medically acceptable diagnostic techniques.  Dr. Perez opined, among other things, that plaintiff: could stand and/or walk up to two hours per day; could sit for up to four hours per day; could carry between five and ten pounds; could never reach overhead but could occasionally reach forward and laterally and frequently handle, finger, and feel with her left arm, and; would need to lie down during the work day, switch between sitting and standing, take frequent breaks, and take two or more sick days off each month.  (Tr. 900-02.)  Dr. Perez further opined that future treatment would only "transiently" manage plaintiff's symptoms, and that plaintiff would be unable to maintain any gainful employment due to her cervical spine, left shoulder, right knee, and lumbar spine impairments.  (*Id.* 909.)

Over the course of the six-year treatment period, Dr. Perez performed monthly extensive physical examinations on plaintiff, noting plaintiff's subjective complaints of pain, logging plaintiff's symptomatic responses to function/mobility tests and pain/tenderness tests, and prescribing a course of action based on plaintiff's improvement or decompensation.

17

(Stip. 1-10.)  Dr. Perez ordered and analyzed: several MRIs that revealed mild degenerative disc disease and small central disc protrusion plus impingement in plaintiff's lumbar spine (*id.* 3-4, 6), mild chondromalacia in plaintiff's right patella (*id.* 3-4), small disc protrusions and mild multilevel degenerative changes in plaintiff's cervical spine (*id.* 4); and EMGs that showed a tendon contusion, a low-grade articular sided partial thickness tear, minimal marrow edema in plaintiff's left shoulder (*id.* 4), and radiculopathy in the left L4 region of plaintiff's lumbar spine. (*Id.* 6.)  Upon a review of Dr. Perez's treatment plan, the court finds that it was supported by physical examinations and modern laboratory diagnostic imaging. As a result, the court finds that Dr. Perez's treatment of plaintiff over six-years was well-supported by medically acceptable diagnostic techniques.

Second, ALJ Miller has mischaracterized the evidence in arriving at the conclusion that Dr. Perez's opinion was inconsistent with substantial evidence in the record.  To support this finding, the ALJ cited plaintiff's activities of daily living, plaintiff's reports of moderate pain, and the examination findings, of Dr. Perez and Dr. Rubinshteyn, of intact sensation and only slightly decreased strength.  (*See* Tr. 28.)  Contrary to the ALJ's conclusion, the record demonstrates that plaintiff is significantly limited in her ability to

18

perform daily activities.  For example, plaintiff maintained that she could not hold a job, attend to family needs, or do household chores and needed help performing all personal care. (*Id.* 279-80.)  Though plaintiff has occasionally attended family functions and helped to take care of her cousin's baby, performance of such limited activities is not indicative of an ability to perform sustained work.  "[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'" *Bigler v. Comm'r of Soc. Sec.,* No. 19-CV-03568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) (quoting *Vasquez v. Barnhart,* No. 02-CV-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004).  *See also Murdaugh v. Sec'y of Dep't of Health & Human Servs.*, 837 F.2d 99, 102 (2d Cir. 1988) ("[T]hat appellant receives conservative treatment, waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table is scarcely said to controvert the medical evidence."); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).

Dr. Perez's opinion is based on sound medical evidence collected over a six-year period; during that time, plaintiff

was consistently in pain, and experienced improvement in some symptoms only as others persisted and worsened. (*See Stip.* 1-10; Tr. 903-904.) Dr. Rubinshteyn's finding, after a single examination, that plaintiff's sensation was intact and plaintiff's strength was only slightly decreased, is not sufficient medical evidence to discount Dr. Perez's well-informed opinion. "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013). An inconsistency between the opinion of a treating physician and that of a consultative examiner "is not sufficient, on its own, to reject the opinion of the treating physician." *Cammy v. Colvin*, No. 12-CV-5810, 2015 WL 6029187, at *14 (E.D.N.Y. Oct. 15, 2015) (quoting *Donnelly v. Comm'r of Soc. Sec.*, 49 F. Supp. 3d 289, 305 (E.D.N.Y. 2014)). Indeed, there were discrete moments over the course of Dr. Perez's six-year treating relationship where he reported that plaintiff had intact sensation and normal strength, *see, e.g.*, Tr. 378-79, similar to the one-off findings of consultative examiner Dr. Rubinshteyn. However, such findings must be evaluated in the context of the other significant deficits and impairments Dr. Perez found over a six-year period of treatment, which Dr. Rubinshteyn's one-time observation could not be expected to reproduce.

Accordingly, for the reasons stated above, the court
finds that Dr. Perez's opinion was well-supported by medically
acceptable diagnostic techniques and was not inconsistent with
the substantial objective medical evidence.  On remand, the ALJ
is directed to explicitly consider the *Burgess* factors and
either afford controlling weight to Dr. Perez's opinion or
explain why he will not do so.

**B. Dr. Stiler's Opinion**

As with Dr. Perez, ALJ Miller erred in according only
"some weight," rather than "controlling weight," to claimant's
next treating physician, Dr. Stiler, when ALJ Miller erroneously
concluded that: (1) Dr. Stiler's opinion was not well-supported
by medically acceptable diagnostic techniques; and (2) that Dr.
Stiler's opinion was inconsistent with substantial evidence in
the record.

First, the court reviews Dr. Stiler's findings and
treatment plan to determine whether they are well-supported by
medically acceptable diagnostic techniques.  Dr. Stiler's
findings regarding plaintiff's limitations were largely
consistent with those of Dr. Perez.  Dr. Stiler opined that
plaintiff: could stand and/or walk less than one hour and sit
less than four hours in an eight-hour workday; could carry
between five and ten pounds for 1/3 of a workday; could never
complete functions with her left arm but could occasionally

21

complete functions with her right arm; had environmental restrictions; would need to lie down, switch between sitting and standing, and take frequent breaks during the workday; would need to take two or more sick days off each month, and; had pain that prevented her from working for eight hours.  (Tr. 880-81.) Dr. Stiler further opined that plaintiff was totally and permanently disabled from taking up gainful employment due to cervical and lumbar radiculopathies with protruding discs, a traumatic rotator cuff injury in her left shoulder, anxiety and depression from chronic pain, and a right wrist fracture.  (*Id.* 883.)

Dr. Stiler conducted extensive physical examinations and ordered diagnostic tests for plaintiff over three years.  On multiple examinations, Dr. Stiler observed tenderness with spasms and reduced range of motion of plaintiff's cervical and lumbar spines, tenderness and reduced range of motion of plaintiff's left shoulder, and reduced sensation in plaintiff's left arm.  (*Id.* 767-90.)  An NCV/EMG study showed chronic left C6-level radiculopathy of plaintiff's cervical spine, mild to moderate neuropathy of the median nerve and prolonged latency difference in plaintiff's right forearm.  (*Id.* 791-93.)  Like Dr. Perez, Dr. Stiler used objective diagnostic techniques, including physical examinations and NCV/EMG imaging and studies, to evaluate plaintiff's condition.

Second, ALJ Miller has mischaracterized the evidence in arriving at the conclusion that Dr. Stiler's opinion was inconsistent with substantial evidence in the record.  To support this finding, the ALJ cited plaintiff's reports of daily living, plaintiff's reports of moderate pain, and evidence of intact sensation and slightly decreased strength.  (*Id.* 30; *see id.* 28.)  As the court found in its review of the ALJ's consideration of Dr. Perez's findings, the court further finds that the ALJ has also mischaracterized Dr. Stiler's findings and opinions regarding the plaintiff's condition and limitations. First, contrary to the ALJ's assertion, plaintiff is significantly limited in her ability to perform even the most basic activities, such as her ability to dress, bathe, care for her hair, shave and feed herself.  (*Id.* 279.)  Second, although plaintiff sometimes reported "moderate" pain, Dr. Stiler, the treating physician's opinion is based on sound medical evidence collected over an extended period of time.  (*Id.* 791-93.) Third, the ALJ failed to explain why a consultative examiner's finding, in a single examination, that plaintiff's sensation was intact and strength was only slightly decreased was sufficient to discount the findings and medical tests supporting a treating physician's opinion.  Like Dr. Perez, Dr. Stiler documented significant deficits and impairments that substantially

supported his opinion regarding plaintiff's exertional limitations.

Accordingly, for the reasons stated above, the court finds that Dr. Stiler's opinion was well-supported by medically acceptable diagnostic techniques and was not inconsistent with the substantial objective medical evidence.  On remand, the ALJ is directed to explicitly consider the *Burgess* factors and consider whether to afford controlling weight to Dr. Stiler's opinion, or explain why controlling weight is not accorded.

### C. Dr. Reich's Opinion

ALJ Miller erred in according only "some weight," rather than "controlling weight," to claimant's treating physician, Dr. Reich, when ALJ Miller erroneously concluded that Dr. Reich's opinion was inconsistent with the substantial objective medical evidence.

First, the court reviews Dr. Reich's findings to determine whether they are inconsistent with the substantial objective medical evidence.  Dr. Reich opined that plaintiff had the following mental limitations due to her memory loss, medication-induced cognitive deficits, and loss of sleep: moderate limitations in carrying out simple instructions; moderate limitations in making judgments on simple work-related decisions; marked limitations in understanding and remembering simple and complex instructions; marked limitations in carrying

out complex instructions; and marked limitations in making judgments on complex work-related decisions. (*Id.* 872.) Dr. Reich further opined that plaintiff, due to her anxiety, had: moderate limitations in interacting appropriately with the public and with coworkers; moderate limitations in responding appropriately to usual work situations and to changes in a routine work setting, and; marked limitations in interacting appropriately with supervisors. (*Id.* 873.) In sum, Dr. Reich found that plaintiff had moderate restriction of activities of daily living, severe difficulties in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and severe episodes of deterioration or decompensation, and concluded that plaintiff was presently unable to work. (*Id.* 877-78.)

The ALJ's reasons for concluding that Dr. Reich's opinions were inconsistent with the "substantial objective medical evidence" showing that plaintiff had mostly normal mental status examinations during the period in question are unpersuasive. (*See id.* 29, referring to *id.* 837-58.) First, the ALJ conducts a disjointed and superficial analysis of the "substantial objective medical evidence" which he claims are inapposite to Dr. Reich's findings. (*Id.*) Despite affording treating physician Dr. Conciatori's medical opinion only "some

weight," ALJ Miller cites to Dr. Conciatori's treatment record for the proposition that plaintiff had "mainly normal mental status examinations except for her mood and affect during the period in question." (*Id.*)  The ALJ's lay interpretation of Dr. Conciatori's findings is not a medical finding that may be used to demonstrate an inconsistency with Dr. Reich's findings.  The ALJ is "not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015).  Here the ALJ substituted his own interpretation for Dr. Conciatori's medical findings and opinion.  As the ALJ has failed to demonstrate with specificity what substantial objective medical evidence exists that is inapposite to Dr. Reich's opinion, the court finds that the ALJ's characterization of the medical evidence is in error.

The ALJ failed to accurately characterize or identify substantial evidence that contradicted Dr. Reich's opinion, and to explicitly consider the *Burgess* factors.  Nor did the ALJ adequately explain why Dr. Reich's opinion was not afforded controlling weight.  On remand, the ALJ is directed to explicitly consider the *Burgess* factors and explain the reasons that he will or will not assign controlling weight to Dr. Reich's opinion.

### D. Dr. Conciatori's Opinion

As with Dr. Reich, ALJ Miller erred in according only "some weight," rather than "controlling weight," to claimant's treating physician, Dr. Conciatori, when ALJ Miller erroneously concluded that Dr. Conciatori's opinion was inconsistent with the substantial objective medical evidence.

First, the court reviews the ALJ's consideration of Dr. Conciatori's findings to determine whether the ALJ's conclusions regarding Dr. Conciatori's opinions are supported by substantial objective medical evidence.  Regarding plaintiff's mental impairments, Dr. Conciatori found that plaintiff suffered from lack of attention span, decreased capacity for concentration, poor motivation, anhedonia, and panic attacks. Based on the foregoing findings, Dr. Conciatori concluded that plaintiff had: marked limitations in understanding, remembering, and carrying out simple instructions; marked limitations in making judgments on simple work-related decisions; extreme limitations in understanding, remembering, and carrying out complex instructions, and; extreme limitations in making judgments on complex work-related decisions.  (Tr. 828.)  Dr. Conciatori further opined that, due to plaintiff's heightened anxiety and the frequency of her panic attacks, plaintiff had marked limitations in interacting with coworkers, supervisors, and the public, and in responding to usual work situations and

27

changes in a routine work setting.  (*Id.* 829.)  Dr. Conciatori
found that plaintiff's anxiety and depression would make it
difficult for her to tolerate a work-like setting.  (*Id.* 758.)

Again, the ALJ inappropriately substituted his lay
opinion for that of the treating physician in concluding that
Dr. Conciatori's opinion conflicted with the "substantial
evidence of record."  (*Id.* 30.)  The ALJ noted that "[Dr.
Conciatori] specified [that] [plaintiff] had marked to extreme
limitations in understanding, remembering, and carrying out
instructions and marked limitation in the abilities to interact
appropriately with supervision, coworkers, and the public, and
to respond to changes in the routine work setting as of
September 2013."  (Tr. 30.)  The ALJ appears to have cherry
picked from Dr. Conciatori's treatment notes, citing moments
when plaintiff is largely, though not entirely, in good health,
showing that, "claimant was cooperative, though anxious and with
a constricted affect, had normal speech, was oriented, and had
intact memory, concentration, information, judgment, insight,
and ability to perform calculations and serial 7s."  (*Id.*)
However, the ALJ overlooked Dr. Conciatori's notes that also
indicated that plaintiff's mood was often "depressed," "nasty,"
or "nervous."  (*Id.*)  The ALJ pairs his description of Dr.
Conciatori's treatment notes with selective findings from the
treatment notes of Drs. Reich and Lefkowitz to claim that

treating physician Dr. Conciatori's medical opinion is
unsupported by the record.  In selectively choosing evidence
that supports the ALJ's lay view of plaintiff's condition, and
in not affording the treating physician Dr. Conciatori's opinion
controlling weight, the ALJ has inappropriately substituted his
lay opinion for a treating physician's medical opinion.  *See
Colvin,* 802 F.3d, at *375.

As the ALJ failed to accurately characterize or cite
with particularity the substantial evidence that contradicted
Dr. Conciatori's opinion, and because the ALJ failed to
explicitly consider the *Burgess* factors, the court finds that
Dr. Conciatori's opinion should have been afforded controlling
weight.  On remand, the ALJ is directed to explicitly consider
the *Burgess* factors, consider whether to assign controlling
weight to Dr. Conciatori's opinion, and explain the bases for
deciding whether or not to do so.

On balance, the ALJ selectively relied on
inconsistencies in the treating physicians' opinions as a basis
for denying plaintiff disability benefits.  This was in
violation of the ALJ's mandate, and, along with the errors noted
above, warrants remand.  *See Clarke v. Colvin*, 15-CV-354, 2017
WL 125362, at *9 (S.D.N.Y. Apr. 3, 2017) ("[T]he ALJ selectively
relied on evidence that weighed against a finding of a
disability.  This is improper—an ALJ may not 'pick and choose

evidence which favors a finding that the claimant is not disabled.'") (quoting *Rodriguez v. Astrue*, 07-CV- 534, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009)); *accord Kebreau v. Astrue*, No. 11-CV-12, 2012 WL 3597377, at *2 (E.D.N.Y. Aug. 20, 2012).

## IV.    The ALJ Erred in Assessing Plaintiff's Credibility

An ALJ evaluating a claimant's subjective complaints of her symptoms must first decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce her pain or other symptoms alleged.  20 C.F.R. § 404.1529(c)(1).  Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms given all of the available evidence.  *Id.*  In assessing the credibility of the claimant's statements regarding her symptoms, the ALJ must consider the following factors: "(1) [The claimant's] daily activities; (2) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (3) Precipitating and aggravating factors; (4) The type, dosage, effectiveness, and side effects of any medication [the claimant] takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, [the claimant] receives or has received for relief of pain or other symptoms; (6) Any measures the claimant uses or [has] used to relieve pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every

hour, sleeping on a board, etc.); and (7) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms."  20 C.F.R. § 404.1529(c)(3).  Notwithstanding, the ALJ will consider whether there are any incongruities between the claimant's statements and the rest of the evidence.  20 C.F.R. § 404.1529(c)(4). "Remand is appropriate where an ALJ does not follow these steps."  *Peck v. Astrue*, No. 07-CV-2762, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010).

The ALJ initially found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  (Tr. 21.)  The ALJ then cherry-picked favorable findings by finding that plaintiff's subjective account of the intensity, persistence, and limiting effects of her symptoms were incongruent with the objective medical evidence and other evidence, including: Dr. Soran's "mostly normal" physical exam findings (*id.* 22); Dr. Perez's reports of improvement and stability of physical symptoms with treatment (*id.* 23); Dr. Zeretsky's normal and mild physical exam findings (minus his finding of decreased range of motion in plaintiff's left shoulder) (*id.* 23-24); an MRI of plaintiff's lumbar spine showing "only mild" degenerative changes (*id.* 24); Dr. Tehrany's finding that plaintiff's left shoulder was improving (*id.* 25); Dr. Reich's mostly normal mental status findings (*id.* 26); and

the fact that plaintiff had been able to engage in some activities of daily living. (*Id.* 32.)

The ALJ's evaluation of the credibility of plaintiff's statements was based on an incorrect weighing of plaintiff's treating physicians' medical opinions.  Thus, on remand, the ALJ is instructed to reevaluate plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms in light of the ALJ's careful  reassessment of the medical opinion evidence and the underlying medical evidence.  *See Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 628 (E.D.N.Y. 2017) ("[The ALJ's credibility determination] was further flawed because the ALJ did not give controlling weight to Dr. Alpert's medical opinion, and '[t]he ALJ's proper evaluation of [the treating physician's] opinions [will] necessarily impact the ALJ's credibility analysis'") (internal citations and quotations omitted); *Goff v. Astrue*, 993 F. Supp. 2d 114, 125 (N.D.N.Y. 2012) ("The ALJ's decision to discount Plaintiff's credibility with respect to her respiratory impairments was based in necessary part upon his assessment of Dr. LoDolce's opinion.  [] However, the ALJ's consideration of Dr. LoDolce's opinion was flawed for the reasons stated above.  As such, the question of Plaintiff's credibility as to her physical limitations will need to be revisited on remand after the ALJ reassesses Dr. LoDolce's opinion.")

**CONCLUSION**

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order remand for further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.

For the reasons set forth above, the court grants plaintiff's motion for judgment on the pleadings; denies defendant's cross-motion for judgment on the pleadings; and remands this case for further proceedings consistent with this

Memorandum and Order.  The Clerk of Court is respectfully directed to close this case and enter judgment in favor of plaintiff.

**SO ORDERED.**

Dated:      December 31, 2020
            Brooklyn, New York

                                        /s/
                            _____
                            **HON. KIYO A. MATSUMOTO**
                            United States District Judge
                            Eastern District of New York

34